**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BARBARA HAMILTON, ALIANDRI BAUTISTA, WALTER MOORE, BRENDA CORDERO, DEVON FERNANDEZ, IRENE GOSHAY, TALEIDA GAMBLE, DESIREE WRIGHT, PHILLIP JAMES, SHONYTA ALSTON, SHAASIA HAYES, PATRICK JOHNSON, JACQUELINE GRAVES, ANGEL RIVERA, SARAH CARTER, SHALIVIA COPPEDGE, MIGUEL BAEZ, LOLETTA ROBERTSON, LORICE BATTISTE, TASHEEN BRENT, GRISEL APONTE, MICHAEL BRITT, KYANA WILLIAMS, DERECK LOWERY, and ANITA PETERSON, on behalf of themselves and all other similarly situated,<br><br>                 Plaintiffs,<br><br>  -against-<br><br>THE AUGUST AICHHORN CENTER FOR ADOLESCENT RESIDENTIAL CARE, INC.,<br><br>                Defendant. | Case No.<br><br><br>**COMPLAINT**<br><br><br>**RULE 23 CLASS ACTION** |

Plaintiffs BARBARA HAMILTON, ALIANDRI BAUTISTA, WALTER MOORE, BRENDA CORDERO, DEVON FERNANDEZ, IRENE GOSHAY, TALEIDA GAMBLE, DESIREE WRIGHT, PHILLIP JAMES, SHONTYA ALSTON, SHAASIA HAYES, PATRICK JOHNSON, JACQUELINE GRAVES, ANGEL RIVERA, SARAH CARTER, SHALIVIA COPPEDGE, MIGUEL BAEZ, LOLETTA ROBERTSON, LORICE BATTISTE, TASHEEN BRENT, GRISEL APONTE, MICHAEL BRITT, KYANA WILLIAMS, DERECK LOWERY, and ANITA PETERSON ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Harrison, Harrison & Assoc., Ltd., allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

1

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action on behalf of themselves and other employees of Defendant THE AUGUST AICHHORN CENTER FOR ADOLESCENT RESIDENTIAL CARE, INC. ("August Aichhorn" or "Defendant") who were terminated in late April/early May of 2020 as part of, or as the result of, a plant closing ordered by the Defendant.  In violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et. seq.* and the New York State Worker Adjustment and Retraining Notification Act ("NY WARN Act"), New York Labor Law ("NYLL") § 860 *et. seq.*, Defendant neither provided 60 days advance written notice of their terminations, as required by the WARN Act, nor 90 days advance written notice of their terminations, as required by the NY WARN Act.

2. Congress enacted the WARN Act to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."  *See* 29 CFR § 639.1.  Similarly, New York State enacted the NY WARN Act with its lengthier notice provision to, *inter alia*, "give affected employees more time to get their finances in order, explore health care options, find another source of income, or begin training for future employment."[1] ,

3. Plaintiffs respectfully seek to recover, on behalf of themselves and the Class Members they seek to represent, their wages and benefits, in addition to attorneys' fees and costs, pursuant to the WARN Act and the NY WARN Act.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court over Plaintiffs' WARN claims is based upon 29 U.S.C. § 2104.*, and 28

---

[1] *See* A10847, 2008, N.Y.S. Assemb. Memorandum in Support of Legislation, *available at* https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A10847&term=2007&Memo=Y (last visited May, 25, 2020).

U.S.C § 1331.

5. This Court has jurisdiction over the state law claims brought in this action pursuant to 28 U.S.C. § 1367 in that they arise out of the same set of operative facts and are so related to Plaintiffs' WARN claims that they form part of the same case or controversy.

6. Venue is proper within this District pursuant to 28 U.S.C. § 1391, because Defendant maintains its administrative office in, does business in, and accordingly resides in, this District. Venue is further proper within this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District.

7. Accordingly, this action properly lies in the Southern District of New York, pursuant to 28 U.S.C. 1391.

## THE PARTIES

8. Plaintiff BARBARA HAMILTON is a resident of New York County, State of New York, who was employed by Defendant from in or about March, 1998, until May 1, 2020.

9. Plaintiff ALIANDRI BAUTISTA is a resident of New York County, State of New York, who was employed by Defendant from in or about September, 2017, until April 27, 2020.

10. Plaintiff WALTER MOORE is a resident of New York County, State of New York, who was employed by Defendant from in or about July 2007 until May 18, 2020.

11. Plaintiff BRENDA CORDERO is a resident of Bergen County, State of New Jersey, who was employed by Defendant from April17, 2010, until April 17, 2020.

12. Plaintiff DEVON FERNANDEZ is a resident of Bronx County, State of New York, who was employed by Defendant from in or about June, 2017, until May 1, 2020.

13. Plaintiff IRENE GOSHAY is a resident of Queens County, State of New York, who was employed by Defendant from in or about March, 1998 until May 1, 2020.

14. Plaintiff TALEIDA GAMBLE is a resident of Bronx County, State of New York, who was employed by Defendant from in or about July 27, 2017 until April 27, 2020.

15. Plaintiff DESIREE WRIGHT is a resident of New York County, State of New York, who was employed by Defendant from in or about 2013 until April 27, 2020.

16. Plaintiff PHILLIP JAMES is a resident of New York County, State of New York, who was employed by Defendant from in or about September 1, 2005 until May 1, 2020.

17. Plaintiff SHONTYA ALSTON is a resident of Rockland County, State of New York, who was employed by Defendant from in or about August 4, 2016 until May 1, 2020.

18. Plaintiff SHAASIA HAYES is a resident of New York County, State of New York, who was employed by Defendant from in or about February 17, 2017 until May 1, 2020.

19. Plaintiff PATRICK JOHNSON is a resident of Bronx County, State of New York, who was employed by Defendant from in or about 2014 until May 2, 2020.

20. Plaintiff JACQUELINE GRAVES is a resident of New York County, State of New York, who was employed by Defendant from in or about 2005 until April 27, 2020.

21. Plaintiff ANGEL RIVERA is a resident of Bronx County, State of New York, who was employed by Defendant from in or about January 6, 2018 until May 1, 2020.

22. Plaintiff SARAH CARTER is a resident of Monroe County, Pennsylvania, who was employed by Defendant from in or about June 1, 1997 until April 27, 2020.

23. Plaintiff SHALIVIA COPPEDGE is a resident of Bronx County, State of New York, who was employed by Defendant from in or about December 28, 2015 until May 1, 2020.

24. Plaintiff MIGUEL BAEZ is a resident of New York County, State of New York, who was employed by Defendant from in or about June 1, 2009 until May 1, 2020.

25. Plaintiff LOLETTA ROBERTSON is a resident of New York County, State of New York, who

was employed by Defendant from in or about December 15, 2013 until May 1, 2020.

26. Plaintiff LORICE BATTISTE is a resident of Bronx County, State of New York, who was employed by Defendant from in or about October 2, 1999 until May 1, 2020.

27. Plaintiff TASHEEN BRENT is a resident of Bronx County, State of New York, who was employed by Defendant from in or about June 1, 2000 until May 1, 2020.

28. Plaintiff GRISEL APONTE is a resident of Bronx County, State of New York, who was employed by Defendant from in or about January 2012 until May 1, 2020.

29. Plaintiff MICHAEL BRITT is a resident of New York County, State of New York, who was employed by Defendant from in or about June, 2010 until April 27, 2020.

30. Plaintiff KYANA WILLIAMS is a resident of Bronx County, State of New York, who was employed by Defendant from in or about July 28, 2017 until May 1, 2020.

31. Plaintiff DERECK LOWERY is a resident of Kings County, State of New York, who was employed by Defendant from in or about February 25, 1998 until May 1, 2020.

32. Plaintiff ANITA PETERSON is a resident of New York County, State of New York, who was employed by Defendant from in or about February 25, 1998 until May 1, 2020.

33. At all times relevant hereto, Plaintiffs and the Class Members were "employees" of Defendant August Aichhorn.

34. Defendant THE AUGUST AICHHORN CENTER FOR ADOLESCENT RESIDENTIAL CARE, INC. ("August Aichhorn" or "Defendant") is a New York not-for-profit corporation, with its administrative offices located at 15 W 72nd Street, New York, NY 10023, which at all times relevant hereto operated two residential service programs in New York City (one in Manhattan and the other in Brooklyn), as well as a school, to provide treatment and long-term

care to teenagers who need psychiatric care and/or treatment. [2]

35.  At all times relevant hereto, Defendant is, and has been, an "employer" within the meaning of Section 2(a)(10) of the WARN Act, 29 U.S.C .§ 2101(a)(1) and Section 860-(a)(3) of the NY WARN Act.

36. At all times relevant hereto, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of overtime.

## FACTUAL ALLEGATIONS

37. For many years, Plaintiffs and the Class Members were employed by Defendant in various positions in Defendant's residential service programs.

38. On March 11, 2020, Defendant issued letters to some, but not all, of its employees, including many of the Plaintiffs and Class Members, that stated that its Board had decided that it "must immediately begin the process of closing".  The March 11th letter did not indicate a closing date but promised to "try to keep everyone informed as this situation develops".  A copy of the 3/11 letter is annexed hereto as Exhibit "1".

39. Sixteen days later, on March 27, 2020, Defendant issued letters to some, but not all, of its employees, including many of the Plaintiffs and Class Members, informing them that their employment would terminate on or about May 1, 2020.  A copy of the 3/27 letter is annexed hereto as Exhibit "2".

40. Shortly thereafter, on April 6, 2020, Defendant filed a Warn Notice with the New York State Department of Labor[3] (the "Warn Notice"), a copy of which is annexed hereto as Exhibit "3", which indicated that its "layoff date" and "closing date" would be "May 1".  Defendant did not distribute the Warn Notice to its employees, including the Plaintiffs and Class Members.

---

[2] https://www.aichhorn.org - accessed 5/15/20

[3] https://labor.ny.gov/app/warn/details.asp?id=7861 – accessed 5/24/2020.

41. Several weeks later, on or about April 23, 2020, many of the Plaintiffs and the Class Members received letters from Defendant indicating that their employment would terminate on April 27, 2020 ("Termination Letter").  A copy of a Termination Letter is annexed hereto as Exhibit "4".

42. On or about May 1, 2020, Defendant ceased operations at its Manhattan location.  As a result of this closure, Defendant terminated almost all of its employees employed at its Manhattan location, including all of the Plaintiffs and Class Members.

43. As the permanent shutdown of Defendant's Manhattan location resulted in an employment loss of more than 50 full-time employees within a thirty (30) day period, the shutdown constituted a plant closing as defined in the WARN Act, 29 U.S.C .§ 2101(a)(2).

44. As the permanent shutdown of Defendant's Manhattan location resulted in an employment loss of more than 25 full-time employees within a thirty (30) day period, the shutdown constituted a plant closing as defined in the NY WARN Act § 860-(a)(6).

45. Defendant failed to provide Plaintiffs and the Class Members with sixty (60) days advance notice of the plant closing as required by the WARN Act, and with ninety (90) days advance notice of the plant closing as required by the NY WARN Act.

46. Defendant failed to pay Plaintiffs and the Class Members their wages and salaries following their respective terminations, and failed to make the 403(b) contributions and provide health insurance coverage and other employee benefits payments in respect to them for sixty (60) and ninety (90) calendar days from the date(s) they were given notice of Defendant's plant closing.

47. Defendant's sudden closure and failure to provide the required notice to Plaintiffs and the Class Members had a severe financial impact on them because Defendants failed to pay Plaintiffs and the Class Members their wages and salaries, as well as their health and retirement benefits for the full notice period.

48. Further, the Defendant failed to provide a statement in its Warn Notice stating the basis for providing less than the required notice, as required by the WARN Act, 29 U.S.C § 2101(b)(3), and NYLL § 860-(c)(2).

49. Defendant committed the foregoing acts in an effort to suppress their labor costs, and acted knowingly, intentionally and willfully against the Plaintiffs and the Class Members.

### RULE 23 CLASS ALLEGATIONS

50. Plaintiffs bring their claims pursuant to the Fed. R. Civ. P. ("FRCP") Rule 23, to recover unpaid wages, salary, 403(b) contributions, health insurance coverage, other employee benefits, and other damages on behalf of all individuals employed in the State of New York by Defendant who were terminated as part of the plant closing ordered by Defendant in the latter half of April/early May of 2020 and did not receive sixty (60) days notice under the WARN Act and/or ninety (90) days notice under NY WARN Act.  All said persons, including Plaintiffs, are referred to herein as the "Class Members" and/or the "Class".

51. The number, names and addresses of the Class Members are readily ascertainable from the records of Defendant. The dates of employment and the rates of pay for each Class Member, and the wages paid to them, are also determinable from Defendant's records which they are required by law to maintain.  Notice can be provided by means permissible under FRCP Rule 23.

52. The proposed Class is so numerous – the Warn Notice that Defendant filed with the New York State Department of Labor identified 141 employees – that joinder of all Class Members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court.

53. Plaintiffs' claims are typical of the claims of the Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.  All the Class Members were subject to the same corporate practices of Defendant, in that they were not given

(a) sixty (60) days advance notice of the plant closing as required by the WARN Act, and (b) ninety (90) days advance notice of the plant closing as required by the NY WARN Act.

54. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

55. As fellow employees of Defendant, which failed to provide them with the notices required by the WARN Act and the NY WARN Act, Plaintiffs and the other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

56. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs have retained Harrison, Harrison & Associates, competent and experienced employment litigators.

57. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of WARN litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class Members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a

class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

58.  Upon information and belief, employees of defendants in these types of actions are often afraid to individually assert their rights out of fear of direct or indirect retaliation and former employees are fearful of bringing individual claims because of the fear that doing so could harm their employment, future employment, and future efforts to secure employment.  A class action provides class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

59.  The questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, including whether Defendants failed to provide the Class Members with the advance written notice of their terminations required by (a) the WARN Act, and (b) the NY WARN Act.

60.  Absent a class action, many of the Class Members likely will not obtain redress of their injuries.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(The WARN Act – Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

61. Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

62. The WARN Act requires that an employer not order closure or a mass layoff until 60 days after it serves written notice to the affected employees.

63. The failure of Defendant to provide Plaintiffs or the Class Members with the required 60 days advance notice of Defendant's plant closing was unconscionable and irresponsible and constituted a blatant violation of the WARN Act, 29 U.S.C. § 2102.  Upon information and belief, Defendant was aware that it was going to shut down and nonetheless failed to provide its long-term employees, some of whom had worked for Defendant for more than twenty years, with the statutorily required notice that it was closing.

64. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial, and Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective unpaid wages and health and retirement benefits, pre and post judgment interest, attorneys' fees and costs, pursuant to the WARN Act, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(The NY WARN Act – NYLL, Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

65. Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

66. The failure of Defendant to provide Plaintiffs or the Class Members with the required 90 days advance notice of Defendant's plant closing was unconscionable and irresponsible, and constituted a blatant violation of the NY WARN Act, NYLL § 860-(b).

67. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs and the Class Members have sustained damages, including loss of earnings, in an amount to be

established at trial, and Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective unpaid wages and health and retirement benefits, pre and post judgment interest, attorneys' fees and costs, pursuant to the NY WARN Act, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class Members, pray for relief as follows:

(a)   Certification of this action as a class action;

(b)   Designation of Plaintiffs as the Representatives of the Class;

(c)   An award of damages, according to proof, including statutory damages and interest, to be paid by Defendant;

(d)   Costs of action incurred herein, including expert fees;

(e)   Attorneys' fees, including fees pursuant to 29 U.S.C. § 2102 and NYLL § 860-(b) and other applicable statutes;

(f)   Pre-Judgment and post-judgment interest, as provided by law; and

(g)   Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: May 26, 2020

Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES

__/S/ DAVID HARRISON_____
David Harrison, Esq.
dharrison@nynjemploymentlaw.com
Julie Salwen, Esq.
jsalwen@nynjemploymentlaw.com
110 State Highway 35, Suite 10
Red Bank, NJ 07701

(718) 799-9111 Phone
(718) 799-9171 Fax
*Attorneys for Plaintiffs & the Putative Class*

# EXHIBIT "1"

# The
# August Aichhorn Center
for
# Adolescent Residential Care, Inc

15 West 72nd Street, Room L-J, New York, New York 10023
www.aichhorn.org

(212) 873-9170
fax:  (212) 721-4106

March 11, 2020

Dear Aichhorners,

Sadly, I must now let everyone know that the Aichhorn Board has decided that the RTF programs must immediately begin the process of closing. While we will all need plenty of time to discuss and understand this, the reality is that we simply cannot afford to consider it in a leisurely fashion; we have to begin active planning immediately.

The final closing date is not yet set, but, for practical reasons, it will have to be in the next few weeks.

Discharge planning for all residents must begin on an urgent basis right now. We have asked OMH for their cooperation and assistance, but so far there has been no response.

Aftercare for discharged residents and their families will continue for at least a month after the closing date.

Work will continue for all regular staff for <u>at least</u> one pay period after the final residents are discharged. Unit leaders, therapists, administrative and certain other support staff will continue for at least two pay periods. Some workers, depending on area of work and seniority, will be needed for longer. Individuals will be notified directly as these plans become more clear.

I am sorry not to be able to offer more detailed plans and answers to your many questions. Much remains unknown. I will try to keep everyone informed as this situation develops—it's a new experience for all of us. The program director, the administrative director and I will be glad to try to answer any specific questions you have.

I would just like to add that, in this very difficult time, it is more important than ever that we remain proud of our work, and supportive of each other. Obviously, we are all hurting, but we can get through this together.

As always,

# EXHIBIT "2"

The
# August Aichhorn Center
for
# Adolescent Residential Care, Inc

15 West 72nd Street, Room L-J, New York, New York  10023
www.aichhorn.org

fax:   (212) 873-9170
(212) 721-4106

March 27, 2020

BY HAND

Dear Devon Fernandez

This is to follow up my letter of March 11, 2020.  As you know, due to a series of unexpected decisions by the New York State Office of Mental Health, the Board of the August Aichhorn Center has decided to permanently stop operating its two Residential Treatment Facilities programs (Manhattan and Brooklyn) on or around May 1, 2020, when the current State operating certificate expires.  As of yesterday, the Office of Mental Health has expressed the intention of identifying another agency, "within a week or two," that will be able to take over operation of both programs on or before Aichhorn's operating certificate expires on April 30.  I apologize that, because the State's actions have come as a surprise to us and are completely beyond our control, I have not been able to provide more advance notice of any of these events, and even now much remains very unclear.  I will let you know as soon as we learn who the new operator will be and any other details about their plans and the timing of the takeover.

In the meantime, while we obviously cannot make any commitments on the part of the new operating agency, we have been told that it is extremely likely that most staff will be able to transfer their employment to the new operator when control of the programs is transferred.  This will mean that both residents and staff will not be suddenly displaced, and that they will be able to maintain relationships built over the years.  I am very pleased about this aspect of the plan.

However, I am sorry to have to now notify you formally that, when Aichhorn ceases to operate the RTF programs on or around May 1, 2020,  your employment with Aichhorn will permanently terminate.  Your vested pension (403b) funds will not be affected, although you will be free to transfer the funds to another type of plan.

Legally speaking: on or about May 1, 2020 "employee separations" from Aichhorn are expected to occur.  You may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners.  You may also be eligible for unemployment insurance benefits.  The New York State Department of Labor may arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends.  You can also access reemployment information and apply for unemployment insurance

benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance. There are no bumping rights at Aichhorn, that is, you will not be able to displace another employee whose employment does not terminate at the time of your separation from Aichhorn.

I realize this is a very difficult time, and I want personally again to thank everyone who has been working so hard to try to maintain a sense of "normalcy" for the children during these stressful weeks. As of the date of this letter, I believe the information contained in this letter to be accurate. Be assured that I will do everything I can to keep you informed as our situation develops, even as the world-wide medical problems also unfold. In the meantime, Carmen Torres, Tonya Brown and I will be glad to try to answer any individual questions you have. We can be reached at (212) 316-9353.

All best wishes,

Michael A. Pawel, M.D.
Executive Director

# EXHIBIT "3"

## WARN Details

Date of Notice:  4/6/2020

Event Number:  2019-1156

Rapid Response Specialist:  Stuart Goldberg

Reason Stated for Filing:  Plant Closing

Company:
The August Aichhorn Center for Adolescent Residential Care, Inc. (2 Locations)
23 West 106th Street
New York, NY 10025

County:  New York/Kings | WDB Name:  NEW YORK CITY | Region:  New York City

Contact:  Carmen Torres, Administrative Director

Phone:  (212) 316-9353

Business Type:  Adolescent Care

Number Affected:  141

Total Employees:  141

Layoff Date:  5/1/2020

Closing Date:  5/1/2020

Reason for Dislocation:  Economic

FEIN NUM:  -----

Union:  The employees are not represented by a union.

Classification:  Plant Closing

 **Other The August Aichhorn Center for Adolescent Residential Care, Inc. Site:**

2050 Dean Street, Brooklyn, NY 11233

# EXHIBIT "4"

The
# August Aichhorn Center
for
# Adolescent Residential Care, Inc

(212) 873-9170

15 West 72nd Street, New York, New York 10023
www.aichhorn.org

April 23, 2020

Dear Michael Britt,

Unhappily, I must now inform you that, because the RTF-Manhattan is closing, your employment at August Aichhorn will terminate on April 27, 2020.

If you have health insurance through Aichhorn, your coverage will continue through April 30 , and you will have the option to extend it for up to 18 months under COBRA.  You will receive information about COBRA under separate cover.

Your 403(b) retirement funds will continue to be managed by Vanguard, and you should feel free to consult with them about your options to "roll over" the money into a different type of account.

Many of us have worked here for many years, have been proud to build this program into the model that it was, and are deeply saddened by its untimely ending.  I completely share these feelings.  I believe, however, that we can take some comfort in the hope that what we have done will not be forgotten, but that it may, in the end, be remembered as an example of the best that is possible in our field.  I hope too that the lessons we have all learned will turn out to be helpful to us in the future, whatever that may bring.

All best wishes,